*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　　*Plaintiff-Appellee,*

　　　　v.

JOHN DAVID KUEHNE, JR.,

　　　　　　　*Defendant-Appellant.*

No. 06-3668

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 03-00063—Thomas M. Rose, District Judge.

Argued:  March 13, 2008

Decided and Filed:  October 28, 2008

Before:  CLAY and McKEAGUE, Circuit Judges; BOYKO, District Judge.[*]

---

## COUNSEL

**ARGUED:**  Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant.  Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:**  Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant.  Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. John D. Kuehne, Jr., Terre Haute, Indiana, pro se.

---

## OPINION

---

　　　　CLAY, Circuit Judge.  Defendant, John David Kuehne ("Kuehne"), appeals his conviction for one count of conspiracy to steal firearms from a federally licensed firearms dealer in violation of 18 U.S.C. § 371; two counts of aiding and abetting the theft of firearms from a firearms dealer in violation of 18 U.S.C. §§ 922(u), 2 and 924(i); three counts of possessing stolen firearms in violation of  18 U.S.C. §§ 922(j) and 924(a)(2); three counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); and three counts of use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).  Kuehne raises a number of challenges to his conviction.  For the reasons that follow, we **AFFIRM** Kuehne's conviction.

---

[*]The Honorable Christopher A. Boyko, United States District Judge for the Northern District of Ohio, sitting by designation.

## BACKGROUND

### A.      Factual Background

In November of 2002, four individuals, Jeremy Fogt ("Fogt"), Daniel Minaya ("Minaya"), David Nunez ("Nunez") and Kuehne met in Columbus, Ohio and discussed an opportunity for the sale of an illegal drug popularly known as "ecstacy" at reduced prices. Fogt, Kuehne and Minaya were friends and frequently purchased and sold ecstacy to one another, with Nunez serving as the ultimate supplier. Nunez, who alternatively went by "Noonie" or "12 o'clock," was from New York City.

During the discussion, Nunez indicated that he was interested in obtaining semi-automatic weapons and that he was amenable to trading his supply of ecstacy for firearms. Kuehne and Fogt agreed to the guns for drugs exchange. Later, Kuehne and Fogt traveled back to their home in Sidney, Ohio. On the way home, the two discussed how they would obtain the guns to supply Nunez in exchange for ecstacy. The conversation soon turned to Fogt's cousin, Nathan Marlow ("Marlow"), who had previously stolen firearms without being caught. Marlow was later approached by Fogt and agreed to participate. Marlow then solicited the assistance of his friend, Justin Duckro ("Duckro"), who had a car that could be used during the robberies. Duckro agreed to help, in exchange for half of whatever Marlow received from the robberies.

In early December of 2002, Kuehne and Marlow selected and "cased" their first robbery target, Rich Mart Guns and Ammo. Later, Marlow and Duckro returned to Rich Mart and stole approximately fifty semi-automatic pistols. The guns were then taken to Fogt's house for storage. Thereafter, Kuehne and Fogt traveled to New York to exchange the weapons with Nunez. On the way, Kuehne delivered three guns to Minaya.

Upon meeting with Nunez, Kuehne exchanged thirty semi-automatic pistols for 1,000 pills of ecstacy. Although Kuehne and Fogt agreed to split the pills, Fogt later purchased Kuehne's share. Marlow received 200 pills, some of which were then given to Duckro.

In January of 2003, Kuehne, Marlow and Duckro selected the next robbery target, Craig's Gun Shop in North Lewisburg, Ohio. Marlow and Duckro later robbed the store, taking approximately twenty handguns and more than twelve assault rifles. Again, the weapons were stored at Fogt's house and Kuehne took the guns to New York for exchange with Nunez. Marlow also took a number of weapons and sold them in Tennessee.

In February of 2003, Marlow and Duckro robbed Niekamp's Flea Market in St. Henry, Ohio and stole over 100 semi-automatic pistols. Approximately one-half of the weapons was stored at Fogt's house and the other half was taken to New York. Prior to taking the trip to New York, Kuehne borrowed a car from a friend, Andy Murray, in exchange for money and a gun.

To pay for the trip, Kuehne sold a number of guns in Sidney. Kuehne offered to sell the guns to three individuals, Robert Hilyard, Fred Hilyard and Jimmy Riggins, who declined. Eventually Kuehne, Fogt and Marlow made it to New York to barter the firearms with Nunez, and returned to Sidney with approximately 2,000 ecstacy pills.

Between late 2002 and early 2003, Kuehne made several trips to New York City to barter with Nunez. On one occasion Kuehne took his girlfriend, Lisa Hicks, along for the trip and stayed overnight at Nunez's after taking in the sights in New York. Upon return from a trip to New York, Duckro notified Kuehne that police had become aware of their activities because individuals had been caught in possession of the stolen weapons. Soon thereafter, Kuehne was arrested. While incarcerated at the county jail, Kuehne telephoned his mother regarding digital photographs of him

and his girlfriend in New York. Kuehne "request[ed] her to go and get these two digital disks, and he stated to her that it was very, very important." (J.A. at 1244)

## B.    Procedural Facts

In May of 2003, a grand jury sitting in the Southern District of Ohio returned a fifteen-count indictment against Kuehne, Fogt, Marlow and Duckro. Kuehne was charged in twelve counts of the indictment. The indictment alleged one count of conspiracy to steal firearms from a federally licensed firearms dealer in violation of 18 U.S.C. § 371, two counts of aiding and abetting the theft of firearms from a firearms dealer in violation of 18 U.S.C. §§ 922(u), 2 and 924(i), three counts of possessing stolen firearms in violation of 18 U.S.C. §§ 922(j) and 924(a)(2), three counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), and three counts of use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Each count alleged in the indictment specified the involvement of one to two guns. Fogt, Marlow and Duckro entered into plea agreements with the government and Kuehne proceeded to trial on the offenses listed in the indictment.

Prior to trial, Kuehne filed a motion to suppress evidence gathered when police seized his cellular phone and obtained the names of a number of potential witnesses. The district court granted the motion in part and denied the motion in part. Thereafter, at Kuehne's trial in September of 2004, the government called a number of witnesses that participated in the gun robberies or the trips to New York, including Fogt, Marlow, Duckro, and Lisa Hicks. The government also called Robert Hilyard, Fred Hilyard and Jimmy Riggins to testify regarding Kuehne's attempt to sell them weapons. Altogether, the government offered evidence that over 200 firearms were involved in the offenses alleged in the indictment. In his defense, Kuehne alleged that he did not participate in any of the counts alleged in the indictment and called his mother as an alibi witness for the dates he was alleged to have been in New York. Following the dismissal of count 7 of the indictment, the jury returned a verdict of guilty as to all of the remaining counts.

Following his conviction, Kuehne, proceeding pro se, filed a motion for acquittal and a motion for new counsel. The district court granted Kuehne's motion for new counsel and denied his motion for a new trial after a hearing.

On May 10, 2006, the district court conducted Kuehne's sentencing hearing. The district court sentenced Kuehne to a sixty-month term of imprisonment for count 1, to run concurrently with a 120-month term of imprisonment for counts 6, 11 and 15. Kuehne was also sentenced to concurrent three-year terms of supervised release for counts 1, 2, 4, 5, 9, 10, 13 and 14, and concurrent five-year terms of supervised release for counts 6, 11 and 15.

Kuehne now timely appeals.

## DISCUSSION

## I.    Venue

## A.    Standard of Review

Kuehne argues that the district court erred when it failed to grant his motion for acquittal based on improper venue. The Court "review[s] *de novo* the trial court's denial of a motion for judgment of acquittal. In conducting this review, we view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could find that venue is proper. The [g]overnment's showing on this point need only be supported by a preponderance of the evidence." *United States v. Zidell*, 323 F.3d 412, 420-21 (6th Cir. 2003) (citations omitted).

**B.      Analysis**

Kuehne asserts that venue was improper in the Southern District of Ohio because the actual trading of the guns for drugs took place in the city of New York. This argument is without merit.

"Venue is proper in the state or district where the offense was committed." *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001); *see also* U.S. Const. art. III, § 2, cl. 3 ("Trial shall be held in the State where the said Crimes shall have been committed."); Fed. R. Crim. P. 18 ("[T]he prosecution shall be had in a district in which the offense was committed."). As the Supreme Court noted in *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999), "where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." *Id.* (quoting *United States v. Lombardo,* 241 U.S. 73, 77 (1916)). Thus, "[v]enue may be had in more than one location." *United States v. Williams*, 274 F.3d 1079, 1084 (6th Cir. 2001).

In *Rodriguez-Moreno*, the Court found that venue in a prosecution for using or carrying a firearm "during and in relation to any crime of violence" in violation of 18 U.S.C. § 924(c)(1) is proper in any district where any part of the crime of violence was committed. 526 U.S. at 281-82. The same can be said for a prosecution involving the use of a gun during a drug trafficking crime, also in violation of § 924(c)(1). *Cf. Crozier*, 259 F.3d at 519 ("For drug conspiracies, venue is proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed.").

In the instant case, there was sufficient evidence to support a finding that venue was proper in the Southern District of Ohio inasmuch as the gun robberies and drug exchanges took place in Ohio. The record demonstrates that Kuehne and others illegally acquired guns in Ohio for the purpose of exchanging them for drugs in New York. Moreover, once Kuehne obtained the drugs from Nunez, he returned to Ohio and distributed the proceeds to his co-conspirators. Under such circumstances, a rational trier of fact could find that a part of the charged offenses occurred in the Southern District of Ohio by a preponderance of the evidence. *See United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984).

In pressing his claim regarding the impropriety of venue, Kuehne cites *United States v. Williams*. Kuehne's reliance on *Williams*, however, is misplaced. In *Williams*, this Court considered a venue challenge where a defendant was convicted of conspiracy to possess with intent to distribute marijuana in a Michigan district court. 274 F.3d at 1081. There, Williams, who resided in Texas, became involved in a conspiracy to sell marijuana after being contacted by a confidential police informant. *Id.* The confidential informant arranged to purchase various quantities of marijuana from Williams during tape recorded conversations with Williams and a co-defendant. *Id.* All conversations occurred in and around Houston, Texas. *Id.* During one conversation, the confidential informant expressed his intention to sell the marijuana purchased from Williams in Michigan. *Id.* at 1082. The government used the confidential informant's intention to sell marijuana in Michigan as a justification for venue in Williams' criminal prosecution. *Id.* at 1084. On review, however, this Court found that venue was improper because the alleged conspiracy's only connection to Michigan was a statement of a government informant, who could not be a co-conspirator. *Id.* ("Since a government agent cannot be a conspirator, the only conspirators were Williams and Del Bosque."). Thus, the remaining evidence was insufficient to support a Michigan venue inasmuch as the offense and the overt acts in furtherance of the conspiracy took place in Texas. *Id.* at 1084-85. The instant case, however, is readily distinguishable because significant acts related to the drug trafficking and gun charges took place in Ohio and were conducted by Kuehne and his co-conspirators. Therefore, venue was proper in the Southern District of Ohio.

## II.　Definition of "Use" Under § 924(c)(1)

### A.　Standard of Review

Kuehne alleges that his conduct did not satisfy 18 U.S.C. § 924(c)(1)'s "use" requirement. "Because this issue is a matter of statutory interpretation, we conduct *de novo* review." *United States v. VanHoose*, 437 F.3d 497, 501 (6th Cir. 2006).

### B.　Analysis

Kuehne contends that his conviction for the use of a firearm during and in relation to a drug trafficking offense is invalid inasmuch as the exchange of a gun for drugs does not constitute "use" within the meaning of 18 U.S.C. § 924(c)(1). We disagree.

Section 924(c)(1) imposes a minimum five-year term of imprisonment upon any person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1). On three occasions, the Supreme Court has expounded on the word "use" within the meaning of § 924(c)(1) and on each of those occasions Kuehne's contention that an individual who barters firearms for drugs does not "use" such firearms was expressly rejected. *See Watson v. United States*, 128 S.Ct. 579 (2007); *Bailey v. United States,* 516 U.S. 137 (1995); *Smith v. United States*, 508 U.S. 223 (1993).

In *Smith v. United States*, the Court held that a person "uses" a firearm within the meaning of § 924(c)(1) when firearms are traded for drugs. There, the Court determined that, based on the "ordinary and natural" meaning of "use," "it is both reasonable and normal to say that petitioner 'used' his MAC-10 in his drug trafficking offense by trading it for cocaine." *Smith*, 508 U.S. at 230. In *Bailey v. United States*, the Court again invoked the "ordinary and natural" meaning of "use" to determine that mere possession of a firearm does not constitute "use" within the meaning of the statute. 516 U.S. at 145. Rather, the Court found that § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id*. at 143. Taken together, *Smith* and *Bailey* stand for the proposition that the exchange of guns for drugs satisfies the "active employment" necessary for a gun to be "used" under § 924(c)(1).[1]

While this case was pending on appeal, the Supreme Court further clarified the meaning of the term "use" as stated in § 924(c)(1) with respect to the other side of a guns-for-drugs transaction. *See Watson v. United States*, 128 S.Ct. 579 (2007). In *Watson v. United States*, the Court determined that a defendant who barters drugs for guns does not "use" a firearm during and in relation to a drug trafficking crime for purposes of § 924(c).[2] 128 S.Ct. at 581. Instead, the Court found that the receipt of a weapon could not be squared with *Bailey*'s prior construction that the "use" of a firearm must include "active employment." *Id.* at 583.

In reaching this conclusion, however, the Court did not disturb the central holding in *Smith*: that a person who barters a gun in exchange for drugs can be said to have "used" the gun. *Id*. ("So,

---

[1]Kuehne, in his pro se brief to this Court, alleges that the district court erred in failing to submit to the jury the question of whether he "actively employed" weapons in the commission of a crime. However, as *Smith* and *Bailey* demonstrate, where guns are bartered in exchange for drugs, this satisfies the "active employment" requirement necessary to establish "use" under the statute. Thus, no additional instruction regarding "active employment" was necessary separate and distinct from instructing the jury regarding the "use" of a gun in bartering for drugs.

[2]This Court's precedent is consistent with the Supreme Court's holding in *Watson*. *See United States v. Warwick*, 167 F.3d 965, 975-77 (6th Cir. 1999) (finding that the receipt of a gun in exchange for drugs does not constitute "use" of a firearm for purposes of § 924(c)(1)).

when Watson handed over the drugs for the pistol, the informant or the agent used the pistol, just as *Smith* held, but regular speech would not say that Watson himself used the pistol in the trade."). Thus, *Smith* controls and therefore Kuehne's bartering of firearms for drugs constitutes "use" within the meaning of § 924(c)(1).

## III.     Instruction Regarding Proof Necessary for Conviction Under § 924(c)

### A.     Standard of Review

Kuehne challenges the district court's instructions to the jury regarding the evidence necessary for conviction under 18 U.S.C. § 924(c). This Court reviews challenges to jury instructions for abuse of discretion. *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007). "When jury instructions are claimed to be erroneous, we review the instructions as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005) (quoting *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000)). A judgment may be reversed based upon an improper jury instruction "'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72-73 (6th Cir. 1990)).

### B.     Analysis

The government concedes that the district court erred in its instructions to the jury regarding the burden of proof necessary to support a conviction for § 924(c); however, the government asserts that Kuehne's conviction should nevertheless be affirmed because Kuehne was not prejudiced by the erroneous jury instruction.

The district court instructed the jury as follows regarding the counts in the indictment alleging the violation of 18 U.S.C. § 924(c):

> For you to find John David Kuehne, Jr. guilty of using a firearm during and in relation to a drug trafficking crime as an aider and abettor in Counts VI, XI and XV you [] must be convinced that the Government has prove [sic] each and every one of the following elements beyond a reasonable doubt.
>
>      ***
>
> The exchange or barter of MDMA for a firearm or firearms by an unauthorized person necessarily entails an unlawful act of knowingly and intentionally distributing and/or dispensing a controlled substance in violation of 21 U.S.C. 841(a)(1) which is a drug trafficking crime.

(J.A. at 284-86)

We find, and the government concedes, that the district court's failure to separately instruct the jury regarding the elements of the drug trafficking offenses was erroneous. A defendant has a Fifth and Sixth Amendment right to have a jury pass on the question of whether an offense has been proven beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 287 (1993) ("[T]he Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated."). As noted above, § 924(c)(1) imposes a minimum five-year term of imprisonment upon any person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." Therefore, we have held, "under § 924(c)(1), the government must prove that [Kuehne]: (i) carried or used a firearm; (ii) during and in relation to a

drug trafficking offense." *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999). With respect to the second element of § 924(c)(1), a defendant does not actually have to be charged with or convicted of the underlying separate drug trafficking offense. *United States v. Wang*, 222 F.3d 234, 246 (6th Cir. 2000). Nevertheless, in *United States v. Nelson*, 27 F.3d 199, 201 (6th Cir. 1994), we noted that "it is, of course, necessary that the government prove beyond a reasonable doubt all of the elements of § 924(c), one of which is that the defendant committed the underlying crime."

In the instant case, as both parties agree, the district court provided little guidance to the jury regarding its duty to find the predicate drug offenses beyond a reasonable doubt prior to finding Kuehne guilty of § 924(c)(1). Instead, the district court instructed the jury that "the exchange or barter of MDMA[3] for a firearm or firearms by an unauthorized person *necessarily entails* an unlawful act of knowingly and intentionally distributing and/or dispensing a controlled substance in violation of 21 U.S.C. 841(a)(1) which is a drug trafficking crime." (J.A. at 286) (emphasis added) In essence, the district court instructed the jury that the underlying drug offense need not be separately found because Kuehne's conduct necessarily constituted a crime. This instruction invaded the province of the jury by taking away the question of the predicate drug trafficking offense and therefore was in error.

Determining that the district court erred, however, does not require an automatic reversal. *See Neder v. United States*, 527 U.S. 1, 8, 12-13 (1999). In *Neder v. United States*, "the Supreme Court distinguished between 'trial errors' which may be reviewed for harmless error and 'structural errors' which are excluded from harmless error review. Structural errors reflect a 'defect affecting the framework within which the trial proceeds, rather than simply error in the trial process itself.'" *United States v. Stewart*, 306 F.3d 295, 319 (6th Cir. 2002) (quoting *Neder*, 527 U.S. at 8). In *Neder*, the Court noted that "most constitutional errors can be harmless." 527 U.S. at 8. Although an accused has a constitutional right to have each element charged against him proven beyond a reasonable doubt, the Court held that "the omission of an element is an error that is subject to harmless-error analysis[.]" *Id.* at 15.

In conducting this harmless error review, the Court cautioned that "safeguarding the jury guarantee will often require that the reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error . . . [it] should not find the error harmless." *Id.* at 19. An error will be deemed harmless where an appellate court is satisfied that, despite the deprivation of the due process right, it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty despite the lack of an actual jury finding on that element." *Id.* at 18. This may be found where the omitted element was "uncontested and supported by overwhelming evidence . . . ." *Id.* at 17. Indeed, where the evidence regarding the omitted element is undisputed, "answering the question of whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee."[4] *Id.* at 19.

---

[3]"Ecstasy is sometimes called 'MDMA' because its scientific name is 'methylenedioxymethamphetamine.'" *Gall v. United States*, 128 S.Ct. 586, 592 n.1 (2007).

[4]The conclusion reached by the Supreme Court in *Neder* preceded a significant shift in the Court's Sixth Amendment jurisprudence. Since *Neder* was decided in 1999, the Court has breathed new life into the right to a jury trial in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakeley v. Washington*, 542 U.S. 296 (2004). Indeed, three of the five justices that constituted the majority in *Apprendi*, joined in a dissenting opinion in *Neder*. *Compare Neder*, 527 U.S. at 30 (Scalia, J., dissenting) *with Apprendi*, 530 U.S. at 468. Nevertheless, it appears that *Neder* is still on solid footing given the Supreme Court's decision in *Washington v. Recuenco*, 548 U.S. 212 (2006). In *Recuenco*, relying heavily on *Neder*, the Court held that the "[f]ailure to submit a sentencing factor to the jury, like the failure to submit an element to the jury, is not structural error." *Id.* at 222. Moreover, this Court and our sister circuits have applied *Neder*'s harmless error analysis post-*Apprendi*. *See, e.g.*, *United States v. Stewart*, 306 F.3d 295, 319 (6th Cir. 2002); *United States v. Luke Sanchez*, 483 F.3d 703, 706-07 (10th Cir. 2007). Thus, although it appears that *Neder* may

In the instant case, the district court's failure to instruct the jury regarding its duty to find the predicate drug offenses beyond a reasonable doubt was harmless error inasmuch as the jury was presented with uncontroverted evidence supporting the predicate drug offenses. During the trial, three of Kuehne's co-conspirators testified regarding three separate occasions during which Kuehne participated in the theft of a number of firearms which he later transported to New York and exchanged for ecstacy. As the government notes, this testimony establishes a number of drug trafficking offenses, including "conspiracy to possess ecstacy with intent to distribute, possession of ecstacy with intent to distribute, and distribution of ecstacy." (Gov't Br. at 20)

Before the jury, Kuehne argued that he did not participate in any illegal activity and that his prosecution for the offenses set forth in the indictment came as a result of unreliable statements and testimony from individuals who were simply trying to minimize their punishment for participation in the alleged crimes. It appears, however, that the jury rejected Kuehne's argument that he was not involved in the transactions involving the stolen firearms. Rather, the jury found that Kuehne was actively involved in a conspiracy to trade guns for drugs with individuals based out of New York City. Absent this defense, the evidence of the underlying drug transactions was uncontroverted. Therefore, we are satisfied that, based on this uncontradicted evidence, the jury would have found that the underlying drug transactions took place beyond a reasonable doubt. Thus, although the district court erred in failing to instruct the jury regarding the predicate drug trafficking offenses, such error was harmless inasmuch as Kuehne was not prejudiced by the omission. *See United States v. Luke Sanchez*, 483 F.3d 703, 706-07 (10th Cir. 2007) (finding that district court erred in failing to instruct the jury that it was required to find that a gun was used in furtherance of a drug trafficking crime, but that the error was harmless because the circumstances in which a trade of drugs for guns would not involve drug trafficking were not present). *But see United States v. Korey*, 472 F.3d 89, 96-97 (3d Cir. 2007) (finding that the district court's omission of the "unity of purpose" element from jury instructions regarding conspiracy constituted reversible error where there was substantial controversy regarding the evidence supporting the omitted element).

## IV. Constructive Amendment or Variance of the Indictment

### A. Standard of Review

Generally, this Court evaluates claims of constructive amendments to or variances from an indictment *de novo*. *United States v. Hynes*, 467 F.3d 951, 961 (6th Cir. 2006); *United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998). However, where no specific objection is raised regarding a constructive amendment or a variance before the district court, we are limited to "plain error" review on appeal. *United States v. Mann*, 195 F. App'x 430, 437 (6th Cir. 2006) (plain error applied to constructive amendment claim where no objection was lodged with the trial court); *United States v. Caver*, 470 F.3d 220, 236 (6th Cir. 2006) (plain error review applied to variance appeal). "To establish plain error, there must be (1) error, (2) that is plain, (3) that affects substantial rights. If all of these requirements are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Webb*, 403 F.3d 373, 380 (6th Cir. 2005) (internal citations and quotations omitted). The defendant bears the burden of proving whether a constructive amendment or variance has occurred. *United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir. 2002).

---

be inconsistent with the emphasis placed on a defendant's right to have a jury find, beyond a reasonable doubt, all facts which establish the maximum sentence that can be imposed by a trial court, we are nevertheless obliged to apply its holding absent an intervening decision to the contrary.

**B.          Analysis**

Kuehne alleges that the government constructively amended count 6 of the indictment inasmuch as the jury instructions broadened the basis of conviction under § 924(c). Moreover, Kuehne argues that the discrepancy between the jury instructions, the evidence regarding the number of guns offered at trial and the number of guns alleged in the indictment constitutes either a constructive amendment or a prejudicial variance from the indictment. We find Kuehne's allegations to be without merit.

"An indictment may be the subject of an actual amendment, a constructive amendment, or a variance." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). Thus, constructive amendments and variances are two types of "modifications to indictments that have been recognized by this Court." *Hynes*, 467 F.3d at 961. Constructive amendments and variances, however, differ with respect to the burden placed upon the defendant and the remedy mandated upon a showing that a constructive amendment or variance has occurred.

A constructive amendment "results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005). Constructive amendments are "per se prejudicial because they infringe on the Fifth Amendment's grand jury guarantee." *Hynes*, 467 F.3d at 962 (internal citations and quotations omitted). Because of the constitutional injury that results from a constructive amendment, when proven, a defendant is entitled to a reversal of his conviction. *Id.*

A variance, however, is "not per se prejudicial." *Budd*, 496 F.3d at 521. Rather, reversal is warranted only where a defendant proves that (1) a variance occurred and (2) that the variance affected a substantial right of the defendant. *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000). A variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* at 756-57. The substantial rights of the defendant "are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Hynes*, 467 F.3d at 962 (quoting *United States v. Barrow*, 118 F.3d 482, 488-89 (6th Cir. 1997)).

**1.          Constructive Amendment to Count 6 of the Indictment**

Kuehne contends that count 6 of the indictment was constructively amended by the district court when the court instructed the jury regarding the use of a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c).

As noted above, a constructive amendment occurs where the indictment is effectively altered by the presentation of evidence and jury instructions which change the material elements of an offense. To determine whether a constructive amendment has occurred, therefore, we review the language of the indictment, the evidence presented at trial, the jury instructions and the verdict forms utilized by the jury. *See United States v. Brown*, 332 F.3d 363, 371 (6th Cir. 2003).

Count 6 of the indictment alleged that Kuehne aided and abetted the *use* of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). However, when instructing the jury regarding the offense, the district court erroneously asserted that Kuehne was charged with using and carrying a firearm. In particular, the district court stated:

Count 11**5** charges on or about December 13th, 2002 in the Southern District of Ohio and elsewhere John David Kuehne, Jr. aided and abetted a person known to the grand jury *carrying and/or using two firearms*, to wit: A Taures Model PT 92 [.]9 millimeter pistol, serial number TUE4914 and a Colt model 19110-A1 [.]45 caliber pistol, serial number CV19208 during and in relation to a drug trafficking crime for which he may be prosecuted in the United States . . . .

(J.A. at 1681-82) (emphasis added)

Although the district court properly instructed the jury regarding the elements that must be proven in order to convict Kuehne of the "use" offense and specifically defined "use" within the meaning of the statute, its initial error in stating that Kuehne was charged with both using and carrying a firearm was repeated on the verdict forms given to the jury. The verdict form for count 6 stated "[w]e, the Jury, find Defendant John David Kuehne, Jr. 'Guilty Beyond a Reasonable Doubt' of Aiding and Abetting Using or Carrying [a] Firearm in Relation to a Drug Trafficking Crime, on or about December 13, 2002, a violation of 18 U.S.C. § 324(c) and 2." (J.A. at 42) Indeed, when reading the verdict on count 6, the jury foreperson stated that the jury found Kuehne "guilty beyond a reasonable doubt of aiding and abetting using and carrying a firearm in relation to a drug trafficking crime[.]" (J.A. at 1710)

The difference between the words "use" and "carry" is not merely semantic inasmuch as each has distinct meanings within § 924(c)(1). In *Bailey v. United States*, 516 U.S. 137, 143 (1995), the Supreme Court held that the term "use" is to be construed narrowly and its application limited to the "active employment" of a firearm. "Active employment" includes "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm." *Id.* at 148. The term "carry," however, as used by the statute is construed broadly and retains its ordinary meaning. *Muscarello v. United States*, 524 U.S. 125, 131 (1998). A defendant carries a firearm when he conveys or moves the firearm, including via a vehicle, and when there is "personal agency and some degree of possession" over the firearm. *Id.* at 137; *see id.* (holding that the term "carry" includes driving a car with guns locked in the glove compartment or the trunk). As the Supreme Court has noted, "a firearm can be used without being carried, e.g., when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, e.g., when an offender keeps a gun hidden under his clothing throughout a drug transaction." *Bailey*, 516 U.S. at 146. Based on the disparate meanings of the terms "use" and "carry," the introduction of the term "carry" broadened the basis for conviction on count 6.

Although the jury instructions broadened the basis upon which Kuehne could have been convicted, this fact alone does not resolve the question of whether a constructive amendment or a variance occurred in this case. This court has held that a constructive amendment occurs where both the jury instructions and the evidence at trial vary from the indictment to broaden the basis for conviction. *See United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981); *see also Stirone v. United States*, 361 U.S. 212, 213 (1960). We have also found constructive amendments where jury instructions differ from an indictment, even in the absence of varied evidence, to charge the jury on a separate offense that was not listed in an indictment. *See United States v. Combs*, 369 F.3d 925, 936 (6th Cir. 2004). However, where the jury instructions alone differ from the indictment to charge the same crime, but on an alternative theory, a mere variance occurs and a defendant must demonstrate prejudice. *See Budd*, 496 F.3d at 522, 525; *Martin v. Kassulke*, 970 F.2d 1539 (6th Cir. 1992).

---

**5**It appears that the district court misidentified this count as count 11 when it was actually referencing count 6. For the purpose of our analysis, therefore, we take Kuehne's claim to challenge the district court's instruction with respect to count 6 of the indictment, rather than count 11.

As an initial matter, Kuehne has not alleged that the evidence offered at trial varied from his indictment. Consequently, Kuehne may demonstrate a constructive amendment only upon a showing that the district court charged the jury on an "alternative crime" rather than an "alternative method[] by which one crime . . . could have been committed." *Budd*, 496 F.3d at 522. We find that Kuehne has not made this showing. As we noted in *Combs*, § 924 criminalizes two distinct offenses. The first offense criminalizes the "use" or "carrying" of a firearm "during and in relation to" a drug-trafficking crime, while the second criminalizes the "possession" of a firearm "in furtherance" of a drug-trafficking crime. *Combs*, 369 F.3d at 931. Thus, following the logic of *Combs*, the term "use and carry" provides two alternative methods of conviction for the "during and relation to" offense. *See also United States v. Washington*, 127 F.3d 510, 514 (6th Cir. 1997) ("[A] defendant can be convicted under § 924(c)(1) if he either uses *or* carries a firearm in relation to a drug trafficking offense."). Inasmuch as the jury was charged regarding two different methods of committing the same offense rather than a wholly distinct offense, a variance occurred and Kuehne must demonstrate that his substantial rights were affected by the district court's erroneous jury instruction.

"[I]n this context, substantial rights are affected only when a defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Hynes*, 467 F.3d at 962. In the instant case, we find that Kuehne has not established that his substantial rights were impacted by the erroneous jury instruction. Kuehne's ability to defend himself at trial was not undermined by the instruction because his defense was premised on an assertion that he did not participate in any of the alleged crimes. Moreover, Kuehne has not suggested that the general fairness at trial was compromised or that the indictment will subject him to future prosecutions. Inasmuch as Kuehne has failed to establish that his substantial rights were affected by the jury instruction, he has not shown a prejudicial variance and is therefore not entitled to relief. *See United States v. Blankenship*, 923 F.2d 1110, 1116 (11th Cir. 1991) (finding that an indictment charging the "use" of a firearm during and in relation to a drug trafficking offense was not constructively amended by the district court's addition of the term "carry" when instructing the jury).

### 2.      Remaining Counts

Kuehne further alleges that the government constructively amended the remaining counts of the indictment which charged that Kuehne aided and abetted the theft of, possessed or bartered one or two weapons. Kuehne asserts that because the government offered evidence demonstrating that over 200 weapons were involved in the offenses listed in the indictment, a constructive amendment to the indictment occurred. In the alternative, Kuehne asserts that the increased evidence regarding the number of weapons constituted a material variance. Similar to the above, this argument is without merit.

#### a.      *Constructive Amendments*

First, Kuehne has not demonstrated that a constructive amendment occurred with respect to any of the counts enumerated in the indictment. Although the government offered evidence of more firearms than were listed in the indictment, the jury was instructed regarding the specific weapons charged in the indictment and that it had to find those weapons were involved in the offenses beyond a reasonable doubt.[6] Moreover, nowhere does Kuehne identify a discrepancy between the counts

---

[6]For example, with respect to Count 2, the indictment alleged that Kuehne aided and abetted Nathan Marlow and Justin Duckro in

knowingly steal[ing] and unlawfully tak[ing] and carry[ing] away from the premises of two individuals whose identities are known to the grand jury, doing business as Rich-Mart Guns and Ammo . . . two (2) firearms in the licencees' business inventory, to wit: a Taurus, Model PT92, 9mm

as listed in the indictment and the instructions regarding the necessary elements for conviction on those counts. Thus, Kuehne's constructive amendment contention fails inasmuch as there was no difference between the charges as enumerated in the indictment and the instructions issued to the jury regarding those charges. *Hynes*, 467 F.3d at 965.

####            b.        *Variance*

Second, Kuehne also fails to show that a material variance occurred. In the instant case, the government presented evidence regarding the firearms charged in the indictment. Kuehne's major point of contention is based on the fact that the government produced evidence of additional weapons beyond those alleged to have been stolen in the indictment. The presentation of additional evidence to substantiate charged offenses, however, does not constitute facts materially different from those charged in the indictment. Even assuming that the government's proof of more weapons than were alleged in the indictment constituted a variance, Kuehne has not demonstrated that such a variance affected his substantial rights. The substantial rights of the defendant "are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Hynes*, 467 F.3d at 962 (quoting *United States v. Barrow*, 118 F.3d 482, 488-89 (6th Cir. 1997)). In the case at bar, Kuehne does not allege that the variance affected his ability to defend himself at trial.[7] Indeed, Kuehne's ability to defend himself was not impacted inasmuch as Kuehne's defense essentially came down to an assertion that the government did not meet its burden of proof with respect to the offenses charged and therefore did not rest on the number of weapons attached to any particular count of the indictment. Nor does Kuehne allege a lack of fair notice regarding the criminal charges he would face. *See United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990) (finding that discrepancy between the type of gun alleged in the indictment and the type of gun described in jury

---

pistol, Serial Number TUE49614, and a Colt Model 1911-A1, .45 caliber pistol, Serial Number CV19208, which firearms had been shipped and transported in interstate commerce . . . in violation of 18 U.S.C. §§ 922(u), 924(i)(1) and (2).

(J.A. at 27)

In reciting what was required for conviction under count 2, the district court instructed the jury that it would have to find, beyond a reasonable doubt, that on or about December 13th, 2002 the co-Defendants, Nathan Marlow and Justin Duckro knowingly stole and unlawfully took and carried away from the premises of the individuals doing business as Rich Mart Guns and Ammo, two firearms, to wit: Taurus, Model PT92, 9mm pistol, Serial Number TUE49614, and a Colt Model 1911-A1, .45 caliber pistol, Serial Number CV19208. (J.A. at 1672)

[7]Additionally, it seems that Kuehne is alleging that the overall fairness of the proceedings was impacted by the government's excess proof regarding the number of weapons involved in the offenses. Kuehne alleges that the evidence of additional weapons, including evidence that he possessed weapons at an apartment he shared with Marlow, confused the jury regarding what they were required to find for a conviction.

In support of this allegation, Kuehne points to a question asked by the jury during deliberations. During deliberations, the court received a question from the jury which stated:

Your Honor . . . we don't have a clear understanding of the second question on the verdict forms. Does the number of firearms have to be consistent with the number of arms stolen or the number of arms listed in each count[?]

(J.A. at 1703) After consulting with counsel for both Kuehne and the government, the district court answered the jury as follows: "If you return a verdict on a count you will then determine the firearms involved in the Count which may or may not be the number stated in the count." (*Id.*) The difference between the number of guns listed in the indictment and the number of guns offered into evidence did not impact the general fairness of the trial because whatever confusion the jury may have had regarding the number of weapons required for conviction was clarified by the court without objection from Kuehne.

instruction did not constitute a variance because the defense offered at trial was "not substantially affected by the particular type of firearm with which he was convicted of having involvement").

## V.      Prosecutorial Misconduct

### A.      Standard of Review

In his next assignment of error, Kuehne contends that the prosecutor engaged in misconduct during his trial. This Court reviews "the question of whether prosecutorial misconduct requires reversal *de novo*." *United States v. Stover*, 474 F.3d 904, 914 (6th Cir. 2007). Kuehne concedes that he did not raise an objection regarding any of the alleged prosecutorial misconduct and therefore his contention is to be reviewed for "plain error." Under the plain error standard, "there must be (1) error, (2) that is plain, (3) that affects substantial rights. If all of these requirements are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Webb*, 403 F.3d at 380 (internal citations and quotations omitted).

### B.      Analysis

Generally, to determine whether a prosecutor engaged in misconduct, this Court must consider "whether the prosecutor's conduct and remarks were improper." *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). If this Court finds that the prosecutor engaged in improprieties, this Court must then determine whether the improprieties were flagrant such that a reversal is warranted. *Id.* In determining whether the prosecutor's conduct was flagrant this Court considers: "1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; 2) whether the conduct or remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally made; and 4) whether the evidence against the defendant was strong." *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002) (citing *Carter*, 236 F.3d at 783); *see also United States v. Monus*, 128 F.3d 376, 394 (6th Cir. 1997). Flagrantly improper remarks by the prosecution must be reversed by this Court. *Stover*, 474 F.3d at 915. Moreover, "prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it." *Carter*, 236 F.3d at 783.

If the challenged remarks are not flagrant, reversal is warranted only "if proof of the defendant's guilt was not overwhelming, the defendant objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury." *Stover,* 474 F.3d at 915 (internal citations and quotations omitted).

Kuehne contends that the Assistant United States Attorney ("AUSA") engaged in misconduct by (1) eliciting testimony from witnesses regarding his time in prison; (2) making improper closing arguments to the jury; and (3) posing leading questions to prosecution witnesses. We find that Kuehne has not demonstrated error, much less plain error, regarding the AUSA's conduct during his trial. In this case, the AUSA's remarks were not flagrant, the evidence against Kuehne was strong, and he failed to object at trial. Therefore, reversal is not warranted in this case.

#### 1.      Witness Testimony Regarding Time in Prison

Kuehne argues that the AUSA impermissibly elicited testimony from witnesses regarding his time in prison, despite the fact that he had already stipulated that he had a felony conviction. This argument is without merit.

During Kuehne's trial, the government called a number of witnesses, including alleged co-conspirators. First, the government called Duckro to testify at Kuehne's trial regarding Kuehne's participation in the firearm robberies. On direct examination, the AUSA questioned Duckro

regarding Kuehne's participation in the guns-for-drugs exchange as well as his source of drugs. Duckro responded that Kuehne told him he met his source "while he was in prison." (J.A. at 617) Later, the government called Kuehne's co-defendant Nathan Marlow ("Marlow"), who testified pursuant to a plea agreement. Marlow testified regarding Kuehne's interaction with other co-conspirators. In particular, Marlow testified that Kuehne met one co-conspirator when "[t]hey were in prison together." (J.A. at 867) Later, on cross-examination by Kuehne's counsel, Marlow once again referenced Kuehne's time in prison when he stated that Kuehne and Nunez discussed getting into the music business when the two were in prison together.

The AUSA's conduct in examining witnesses did not constitute misconduct warranting reversal. First, it appears that the AUSA's questioning of the witnesses was not improper. From our review of the transcript, the AUSA asked witnesses who participated in the conspiracy how other members were related or came to know one another. The establishment of a relationship between Nunez and Kuehne was particularly important because of the allegations that Kuehne, for example, aided and abetted the use of guns during and in relation to a drug crime. Thus, the prior relationship between Kuehne and Nunez, as well as other co-conspirators, was relevant to proving a number of the counts in the indictment. *See United States v. Moore*, 376 F.3d 570, 574 (6th Cir. 2004) (noting that testimony in a bank robbery trial establishing that a defendant met a coconspirator while in prison was not improper inasmuch as it proved a "prior relationship" that "was relevant in proving that the [co-conspirators] had a common plan"); *see also United States v. Harris*, 165 F.3d 1062 (6th Cir. 1999) (upholding conviction where government witness made passing reference to defendant's prior arrest). Moreover, the statements regarding Kuehne's time in prison appear to have gone unexplored by the AUSA and thus were relatively isolated within the context of the overall trial. *See United States v. Stotts*, 176 F.3d 880, 886-87 (6th Cir. 1999) (holding that a district court properly denied the defendant's request for a mistrial following a witness' statement that the defendant had "'an extensive criminal record'" because "the remark was isolated and the district court gave an immediate curative instruction").

Second, even if the AUSA's questioning was improper, the questioning was not exceptionally flagrant. As an initial matter, Kuehne was not prejudiced by the witnesses' statements regarding his time in prison. Although Kuehne asserts that the "continual references" to his prison record "prejudiced the jury against" him, (Def. Br. at 22), the jury knew that Kuehne had been convicted of a felony and no additional details regarding that crime were revealed through the AUSA's questioning. Moreover, as stated above, the three instances in which references to Kuehne's time in prison were made were isolated when viewed in light of the entire proceedings, and the evidence against Kuehne was otherwise very strong. Thus, Kuehne is not entitled to reversal as a result of the AUSA's questioning.

### 2.     Prosecutor's Closing Arguments

Next, Kuehne alleges that the AUSA engaged in misconduct during his closing arguments to the jury, thus violating his right to a fair trial. Specifically, Kuehne asserts that the AUSA improperly argued that Kuehne had recruited "specialists" to participate in the conspiracy, when no such facts were in evidence. Kuehne also alleges that the AUSA impermissibly shifted the burden of proof to him by arguing that he did not prove his innocence. Finally, Kuehne argues that the AUSA impermissibly argued that Kuehne conspired to "keep evidence from the jury." (Def. Br. at 25). We disagree.

#### a.     *Recruitment of "Specialists"*

Kuehne alleges that the AUSA argued facts not in evidence when, in closing arguments to the jury, he contended that Kuehne recruited "specialists" to participate in the conspiracy to steal

guns to barter for drugs. In essence, Kuehne is contesting the AUSA's characterization of the evidence presented at trial. This argument is without merit.

During closing arguments to the jury, the AUSA contended that

After meeting with Mr. Minaya and Mr. Nunez in Columbus, Mr. Fogt and Mr. Kuehne returned to Sidney. At that time the Defendant[] agreed that Nathan Marlow should be contacted. Mr. Fogt approached Mr. Marlow and suggested the theft of guns. Mr. Fogt and Mr. Kuehne discussed the idea of obtaining guns with Nathan Marlow. Mr. Marlow said he could steal the guns. And Mr. Marlow confirmed that Mr. Fogt had approached him about stealing the guns.

You should observe here that Mr. Kuehne has recruited one specialist and participated in the recruitment of another specialist for the conspiracy.

(J.A. at 1568)

Kuehne alleges that the statement regarding his recruitment of "specialists" was improper because the statement was "not true in any respect." (Def. Br. at 24) Rather, he alleges that the record reflects that Marlow initiated the formation of the conspiracy and that none of the other conspirators had any special skills. This is essentially a quibble about characterization of evidence. During the trial there was also testimony adduced that Kuehne and Nunez devised the conspiracy and that Marlow was later recruited because he had previously robbed a gun store. Moreover, there was evidence at trial suggesting that Fogt was a well-known distributor of ecstacy and that Kuehne would sell his share of the drug proceeds to Fogt. In fact, Kuehne's counsel referred to Fogt as "Mr. Ecstacy in Sidney." (J.A. at 911) In the instant case, the AUSA summarized the evidence, although subject to conflicting inferences, in a manner that supported its theory of the case. *See Stover*, 474 F.3d at 915 (finding that prosecutor's paraphrasing of the evidence was not improper because "although it is not the only conceivable meaning [of the conversation], it is a meaning supported by the evidence."). Such a summary, or characterization, of the evidence was not improper, nor was it exceptionally flagrant. *See United States v. Drake*, 885 F.2d 323, 324 (6th Cir. 1989) (noting that a prosecutor may "summarize the evidence and comment upon both its quantitative and qualitative significance"). Thus, reversal is not warranted with regard to the AUSA's reference to Kuehne's co-conspirators as "specialists."

b.          *Statement Regarding Uncontroverted Evidence*

Next, Kuehne asserts that the AUSA improperly shifted the burden of proof to him during closing arguments to the jury. This argument is also without merit. During closing argument to the jury, the AUSA did not suggest that Kuehne had the burden of proving that he was innocent; rather, the AUSA merely called the jury's attention to the testimony of three witnesses, Robert Hilyard, Frederick Hilyard and James Riggs, which was uncontradicted by Kuehne. Specifically, the AUSA stated:

The testimony of the witnesses called by the defense, none of their testimony relates to this incident involving the Hilyards and Mr. Riggs. The testimony of those witnesses offers nothing to contradict the testimony of Robert Hilyard, Frederick Hilyard and James Riggs.

The United States suggest that the evidence is overwhelming of the Defendant's guilt on all Counts charged.

(J.A. at 1594-95)

We find that there was nothing improper about highlighting uncontroverted testimony before the jury. Indeed, as this Court has observed, "a prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the government's case" so long as the prosecutor "avoid[s] commenting in such a manner that treads on the defendant's constitutional rights and privileges." *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993). In the instant case, the AUSA's suggestion that Kuehne did not refute the proof presented by the government was not done in such a manner as to suggest that Kuehne had the burden of proving his innocence. Thus, the AUSA's statement highlighting the uncontroverted evidence was not improper.

c.          *Statement Regarding Kuehne's Instructions to His Mother*

Kuehne also contends that the AUSA engaged in misconduct by arguing that Kuehne attempted to withhold, or keep, evidence from the jury. This argument is also without merit.

During closing arguments, the AUSA asserted that Kuehne traveled to New York City immediately following a robbery specified in the indictment. In making this assertion, the AUSA attacked the testimony of Chris Bell, Kuehne's mother, who testified that Kuehne was at her home during the time the alleged robbery and trip to New York City took place. Specifically, the AUSA stated:

> Also please consider that you heard a tape of a conversation between the Defendant and his mother Chris Bell in which Mr. Kuehne recruited his mother to retrieve a piece of material evidence that doesn't belong to him, that belongs to Lisa Hicks. And that is real important, that is very important. In other words, the woman that Mr. Kuehne is recruiting to suppress material evidence is the woman called as a witness to give him an alibi. She is not only the defendant's mother. But the Defendant felt she was capable of assisting him in concealing evidence from you.

(J.A. at 1578)

The AUSA's statements to the jury were not improper, but rather served as proper evidence of guilt for three reasons. First, as the government notes, the AUSA's statement was an accurate summary of the evidence offered at trial. At trial the government produced a photograph of Kuehne and Lisa Hicks in New York City during the time period that Kuehne was alleged to have made trips to New York to exchange guns for drugs with Nunez. The government also produced testimony of a detective who stated that after Kuehne's arrest, law enforcement monitored a conversation between Kuehne and "his mother requesting her to go and get these two digital disks, and he stated to her that it was very, very important." (J.A. at 1244)

Second, this evidence and statement of the AUSA was proper inasmuch as it was intended to call into question the credibility of Kuehne's mother and his alibi. Certainly "[a] prosecutor may not express a personal opinion concerning . . . the credibility of a trial witness because to do so exceeds the legitimate advocate's role by improperly inviting the jury to convict on a basis other than a neutral independent assessment of the record proof." *United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005) (internal citations and quotations omitted). However, this Court has held that "[c]ounsel may argue for a reasonable inference that a witness is not credible . . . assuming there exists evidence from which to so infer." *Id.* (citing *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). The AUSA's statements fall into the latter category inasmuch as there was an evidentiary basis for his argument that Kuehne's mother was not a credible witness.

Third, the AUSA's reference was not improper inasmuch as one could infer that Kuehne's attempt to tamper with evidence is probative of guilt. *See United States v. Munnerlyn*, 202 F. App'x 91, 95 (6th Cir. 2006) (unpublished). For example, in *Munnerlyn*, this Court held that a tape recording of a phone conversation in which a defendant arrested for a robbery made a call from jail

to instruct another person to destroy "it" "was probative evidence suggesting [the defendant's] consciousness of guilt." *Id.* (citing *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986)). In the instant case, like *Munnerlyn*, Kuehne's attempt to destroy the photographs was probative evidence that the jury could consider. Thus, nothing in the AUSA's statement was improper, nor was the statement exceptionally flagrant such that reversal is warranted. *See United States v. Gardiner*, 463 F.3d 445, 459-60 (6th Cir. 2006) (finding that prosecutor's misstatement of evidence, even if improper, "was not flagrant and does not warrant reversal on appeal under plain error review").

### 3. Leading Questions

Lastly, Kuehne contends that the AUSA improperly provided leading questions to witnesses during direct examination. This contention is unpersuasive.

Under Federal Rule of Evidence 611(c), "[l]eading questions should not be used on direct examination of a witness except as necessary to develop the witness' testimony." Fed. R. Evid. 611(c). Although he alleges that the AUSA improperly led witnesses, Kuehne fails to direct this Court to any specific instance in which the AUSA led government witnesses on direct examination. Instead, it appears that leading questions were utilized to direct a witness' attention to a particular individual or date, or to clarify testimony.[8]

## VI. Motion for Acquittal

### A. Standard of Review

This Court reviews a denial of a motion for a new trial for abuse of discretion. *United States v. Kelley*, 461 F.3d 817, 831 (6th Cir. 2006). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Greenwell v. Boatwright*, 184 F.3d 492, 499 (6th Cir. 1999) (quoting *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir. 1996)).

### B. Analysis

Kuehne contends that the district court abused its discretion by refusing to proceed to the merits of his pro se motion for judgment of acquittal or a new trial. We disagree.

On March 7, 2005, over five months after the verdict was rendered in his case, Kuehne filed a pro se motion seeking judgment of acquittal or a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. The government objected to the district court's consideration of the motion, asserting that it was filed more than seven days after the verdict in violation of Rule 33. Kuehne contended that he was unable to comply with the time limits established by the Rule because he was receiving ineffective assistance of counsel. The district court later appointed Kuehne new counsel and conducted a hearing regarding his motion for acquittal.

During the hearing, the district court heard testimony from Kuehne's previous attorney and arguments regarding whether consideration of the motion for acquittal was proper in light of the allegations of ineffective assistance of counsel. After the hearing, the parties submitted memoranda

---

[8] Moreover, under Federal Rule of Evidence 611(a), it is up to the district court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) to avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." As the Advisory Committee notes that accompany Rule 611(c) state, "[a]n almost total unwillingness to reverse for infractions has been manifested by appellate courts."

in support of their respective positions. On April 24, 2006, the district court denied Kuehne's motion for acquittal without discussing the merits. The district court did not abuse its discretion in reaching this conclusion.

A district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, any motion filed on grounds other than newly discovered evidence "must be filed within 7 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1)-(2).

On appeal, Kuehne does not allege that newly discovered evidence excuses his failure to file a timely motion for acquittal. Rather, he asserts that the district court should have reached the merits of his motion for acquittal, notwithstanding its untimely filing, because of the ineffective assistance of his counsel. While Kuehne's argument makes intuitive sense, i.e., that a court should reach the merits of a motion for acquittal where a defendant can demonstrate that he received ineffective assistance of counsel, Rule 33 itself speaks of no such exception.[9] *See*, *e.g.*, *United States v. Vincent*, 20 F.3d 229, 237 (6th Cir. 1994). Instead, the Rule allows for motions to be filed outside of the seven day window only upon a showing of newly discovered evidence. Fed. R. Crim. P. 33(b)(1). Kuehne has made no such showing and therefore the district court did not abuse its discretion in denying the motion for acquittal. *See United States v. Ford,* 187 F. App'x 496, 501 (6th Cir. 2006) (unpublished) (finding that, notwithstanding the defendant's allegation that he was unable to file a timely motion for acquittal under Rule 33 because of ineffective assistance of counsel, the denial of the motion was proper because "the motion for a new trial was late. This fact alone justifies its denial").

## VII.     Alleged Inaccuracies in the Transcript of the Proceedings

### A.     Standard of Review

This Court reviews a district court's refusal to hold an evidentiary hearing for abuse of discretion.[10] *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir. 2002).

### B.     Analysis

Kuehne, proceeding pro se, alleges that the district court erred in failing to correct alleged inaccuracies or alterations of the transcripts of proceedings in his trial. This claim is without merit.

Kuehne alleges that the district court did not comply with the requirements set forth in 28 U.S.C. § 753(b), which requires that "[e]ach session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to

---

[9]Kuehne cites *United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984), for the proposition that when a defendant files an otherwise untimely motion for acquittal but has alleged that he was prevented from filing a timely motion due to ineffective assistance of counsel, the motion for a new trial may be heard on its merits. *United States v. Cronic*, however, is inapposite. In *Cronic*, the Supreme Court stated in a footnote that where the defendant raised the issue of the performance of his counsel though a motion for a new trial under Rule 33, a district court has jurisdiction to reach the merits of the claim, notwithstanding the fact that the case was pending on appeal. *Id.* at 667 n.42. As the government notes, the issue addressed by the Court in *Cronic* is not pertinent to the time limitation issue raised in this case.

[10]In his pro se brief, Kuehne alleges that "the district court has failed to address this issue (the alleged inconsistencies in the transcripts) on numerous occasions." (Def. Pro Se Br. at 1). Consequently, Kuehne requests a remand from this Court "so that the district court and Appellant can review the audio tapes and/or CD's to set forth such [sic] issue more clearly." Construing Kuehne's pro se brief liberally, we take Kuehne's claim as alleging that the district court erred in failing to hold an evidentiary hearing regarding the alleged inaccuracies or omissions in the record.

regulations promulgated by the Judicial Conference and subject to the discretion and approval of the judge." We find that Kuehne is not entitled to a remand on this issue because he has not identified any of the inaccuracies alleged and he did not avail himself of the opportunity to correct the record when invited to do so by the district court.

## VIII.    Propriety of Police Investigation Tactics

### A.    Standard of Review

Kuehne, proceeding pro se, alleges that his convictions should be reversed because police engaged in improper interrogation tactics with two witnesses who testified at his trial. Because this issue was not raised before the district court, it is subject to plain error review. *United States v. Caver*, 470 F.3d 220, 245 (6th Cir. 2006).

### B.    Analysis

Kuehne alleges that the police engaged in impermissible investigation tactics by jointly interviewing two of his co-conspirators, Marlow and Duckro, both of whom would eventually testify at his trial. Kuehne contends this constitutes a violation of his due process rights. This claim is without merit.

Kuehne has not demonstrated that the investigative tactics of police were so "outrageous" as to "shock the conscience" in violation of his due process rights. *See United States v. Barger*, 931 F.2d 359, 363 (6th Cir. 1991). While there may be some occasions where government investigation tactics are so outrageous that "a criminal prosecution for the [crime] violates the fundamental principles of due process," this is not one of them. *United States v. Russell*, 411 U.S. 423, 430 (1973). We have not identified a case that suggests that joint interviews of suspects constitutes a violation of due process, nor has Kuehne directed this Court's attention to any such case. Indeed, Kuehne has not demonstrated error, much less plain error in this regard. Thus, Kuehne is not entitled to relief with respect to this claim.

## IX.    Propriety of the District Court's Findings Regarding Kuehne's Motion to Suppress Evidence

### A.    Standard of Review

Kuehne, proceeding pro se, next alleges that the district court failed to properly record its findings regarding its denial of Kuehne's motion to suppress evidence. Because Kuehne did not raise this issue before the district court, it is reviewed for plain error on appeal. *Caver*, 470 F.3d at 245.

### B.    Analysis

Kuehne alleges that the district court erred when it made factual findings regarding his motion to suppress orally, rather than in writing, in violation of Federal Rule of Criminal Procedure 12.[11] We find this allegation to be without merit.

Prior to the commencement of his trial, Kuehne filed a motion to suppress evidence, including the names of potential witnesses, obtained as a result of a seizure of his cellular phone and review of his phone directory. After conducting a suppression hearing, the district court granted Kuehne's motion upon finding that the seizure of Kuehne's phone was conducted without warrant

---

[11]Kuehne does not, however, challenge the district court's ultimate denial of his motion to suppress evidence.

and without justification by any exception to the warrant requirement. The district court, however, reserved ruling on the extent of the evidence to be suppressed pending an additional hearing to determine if the government would have obtained the evidence through an independent source. Upon hearing the additional testimony from government witnesses, the district court found that, although Kuehne's cellular phone was seized in violation of the Fourth Amendment, the names of four witnesses could be offered at trial because the government knew of the witnesses from other sources. The district court orally announced his findings in lieu of a written opinion. This was not in error.

Rule 12 of the Federal Rules of Criminal Procedure provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record." Fed. R. Crim. P. 12(d). The Rule, however, does not specify the manner in which the findings on the record must be made. Here, the district court produced both a written order granting Kuehne's motion to suppress evidence and stated its reasons orally regarding the scope of that order. Thus, the district court complied with the mandates of Federal Rule of Criminal Procedure 12.

## X.      Submission of Sentencing Facts to the Jury

Kuehne, proceeding pro se, alleges that the district court erred in submitting the question of the number of firearms involved in each offense for determination by the jury. Because this objection was not raised before the district court, it is reviewed for plain error on appeal. *Caver*, 470 F.3d at 245. Here, Kuehne cannot demonstrate error, let alone plain error. Kuehne argues that his Sixth Amendment rights were violated because "Appellant was sentenced under § 2K2.1, pursuant to the findings of an uninstructed jury," instead of "an instructed judge." (Kuehne Pro Se Br. at 5) Clearly Kuehne's argument flies in the face of *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, which have instructed courts to do just the opposite. Moreover, this Court has approved of the use of such verdict forms on prior occasions. *See*, *e.g.*, *United States v. Garner*, 491 F.3d 532, 536-537 (6th Cir. 2007).

## XI.      Sufficiency of the Indictment

### A.      Standard of Review

This Court reviews challenges to the sufficiency of an indictment *de novo*. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). However, where the sufficiency of an indictment is not challenged until appeal, "the indictment must be construed liberally in favor of its sufficiency." *Id.* "Under such circumstances, a conviction must not be reversed unless the indictment cannot be reasonably construed to charge a crime." *United States v. Lloyd*, 462 F.3d 510, 513 (6th Cir. 2006).

### B.      Analysis

Kuehne, proceeding pro se, alleges that his indictment was insufficient with respect to counts 6, 11 and 15 inasmuch as the counts did not specify the predicate drug offenses or the elements of such offenses. Although we agree that particular drug trafficking crimes required under § 924(c)(1) were omitted from the indictment, such an omission does not undermine its sufficiency.

An indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is generally sufficient if it "fully, directly, and expressly . . . set[s] forth all the elements necessary to constitute the offense intended to be punished." *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005) (internal citation and quotation marks omitted). In particular, the indictment must: (1) "set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]" and (2) "be sufficiently specific to enable the defendant to plead double jeopardy in a

subsequent proceeding, if charged with the same crime based on the same facts." *Id.* at 413 (internal citation omitted).

In the instant case, Kuehne correctly notes that counts 6, 11 and 15 did not state which drug trafficking crimes were the predicate offenses for the imposition of § 924(c)(1). In short, the indictment failed to allege a requisite element of § 924(c)(1) itself, i.e., the commission of a drug trafficking crime. However, the failure of the indictment to specify particular drug trafficking offenses does not undermine its sufficiency. The indictment tracked the statutory language of § 924(c) inasmuch as it charged that Kuehne used a firearm "during and in relation to a drug trafficking offense." (J.A. at 21) Thus, the indictment properly gave Kuehne notice of the charges he would be facing at trial. Moreover, the indictment was sufficiently specific so as to provide protection against double jeopardy inasmuch as the counts specified particular dates on which the offenses occurred and the type of drugs which were involved in each transaction (i.e., ecstasy). Thus, liberally construed, the indictment can be read to allege a crime such that reversal is not warranted with respect to this claim. *See United States v. Bright*, Nos. 94-5166/5167, 1995 WL 98816, at *2 (6th Cir. May 8, 1995) (unpublished); *United States v. Hart*, 640 F.2d 856, 858 (6th Cir. 1981) (finding that indictment was sufficient notwithstanding omission of an element where reference to the criminal statute was made and the defendant was not prejudiced).

## XII.    Sufficiency of the Evidence with respect to Counts 2, 9, 10 and 11

### A.    Standard of Review

Kuehne, proceeding pro se, challenges the district court's denial of his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. "A Rule 29 motion is a challenge to the sufficiency of the evidence. [W]hen the sufficiency of the evidence is challenged on appeal, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[.]" *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (internal quotation marks omitted). "[T]his court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not remove every reasonable hypothesis except that of guilt." *Id.* (internal quotation marks omitted). Before reaching the merits of Kuehne's challenge, however, we must determine if the issue was properly preserved for appeal.

A Rule 29 motion is properly preserved for appeal when a defendant makes a "motion for acquittal at the end of the prosecution's case-in-chief and at the close of evidence. Failure to make the required motions constitutes a waiver of the objections to the sufficiency of the evidence." *United States v. Chance*, 306 F.3d 356, 368-69 (6th Cir. 2002). In the instant case, Kuehne moved for an acquittal pursuant to Rule 29 at the close of the government's evidence. The district court denied the motion. As discussed above, Kuehne failed to make a timely renewal of his Rule 29 motion at the close of all of the evidence. Because a Rule 29 motion was not timely renewed at the close of evidence, Kuehne's sufficiency of the evidence challenge is reviewed under a "manifest miscarriage of justice" standard. *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002). Under this standard, "we only reverse a conviction if the record is devoid of evidence pointing to guilt." *Id.*

### B.    Analysis

Kuehne challenges the district court's denial of his Rule 29 motion for acquittal with respect to counts 2, 9, 10 and 11 of the indictment. Kuehne alleges that there was insufficient evidence to sustain a conviction for violation of those counts. This challenge is without merit. The evidence in this case is sufficient to sustain a conviction on counts 2, 9, 10 and 11 of the indictment, "especially under the manifest miscarriage of justice standard." *United States v. Taniguchi*, 49 F. App'x 506, 514-15 (6th Cir. 2002) (unpublished).

Count 2 of Kuehne's indictment charged that he aided and abetted Marlow and Duckro in "knowingly steal[ing] and unlawfully tak[ing] and carry[ing] away from the premises of . . . Rich-Mart Guns and Ammo . . . two firearms." (J.A. at 26-27) In the instant case, there was ample evidence from which the jury could convict Kuehne of the offense enumerated in count 2 beyond a reasonable doubt inasmuch as both individuals whom Kuehne allegedly aided and abetted testified that Kuehne "cased" the Rich-Mart and directed them regarding which firearms to steal. Therefore, the district court did not err in denying Kuehne's motion for acquittal.

Counts 9, 10 and 11 of the indictment alleged that Kuehne used a firearm during and in relation to a drug trafficking offense in violation of § 924(c). Kuehne alleges that there was insufficient evidence to support his conviction for counts 9, 10 and 11 of the indictment because the government did not offer proof regarding the specific type of firearm alleged to have been stolen, possessed or used as alleged in the indictment. Rather, he alleges that the government offered proof of a different type of weapon. This claim is without merit. As this Court noted in *United States v. Robison*, under § 924(c) "the specific type of firearm used or possessed by a conspirator is not an essential element of the crime." 904 F.2d at 369. *Cf. United States v. Smith*, 27 F. App'x 577, 581 (6th Cir. 2001) (unpublished) (finding that the type of firearm used during a robbery was not an essential element of 18 U.S.C. § 922(g)). Thus, the government need not prove, and the jury need not find, that a particular kind of weapon was used during an offense beyond a reasonable doubt.[12]

## XIII. Alleged *Brady* Violation

### A. Standard of Review

Kuehne alleges that the government did not disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S 83 (1963). Because Kuehne did not raise this objection before the district court, this Court reviews his allegation for plain error. *United States v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006).

### B. Analysis

Kuehne, proceeding pro se, alleges that the government's delayed disclosure of an audio tape recording of Marlow making statements regarding his supplier of ecstacy constituted a violation of *Brady*. We disagree.

On September 21, 2004, the second day of Kuehne's trial, just after Justin Duckro began to testify, the government turned over to Kuehne's counsel an audio tape which recorded "a conversation of Mr. Duckro and Mr. Marlow" that had been made "to gather evidence against Mr. Marlow before he was cooperating." (J.A. at 615) The tape was turned over to defense counsel approximately one day before the government called Marlow to the stand as a witness.

Under *Brady*, "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. *Brady* also applies in the context of non-disclosure of evidence which impacts upon the credibility "of a witness whose 'reliability may . . . be determinative of guilt or innocence." *Blood*, 435 F.3d at 627 (quoting *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)). "However, we have held that '*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose' and that a 'delay

---

[12]Kuehne also cannot demonstrate that a material variance occurred because, like *Robison*, he cannot show that prejudice resulted from the variance based on the nature of his defense. 904 F.2d at 369. Indeed, because Kuehne's defense "was predicated on [his] innocence, the jury instruction in no way can be said to have had a prejudicial effect on [his] defense." *Smith*, 27 F. App'x at 582.

only violates *Brady* when the delay itself causes prejudice.'" *Id.* (quoting *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994)). In the instant case, Kuehne's *Brady* claim must fail because he is unable to demonstrate that he was prejudiced by the delayed disclosure of the tape. Here, Kuehne had the tape before Marlow took the stand, and he was able to impeach Marlow with prior recorded statements. Thus, Kuehne's *Brady* claim is without merit.

## XIV.  Jury Instruction Regarding "Conspiracy" and "Aiding and Abetting"

Lastly, Kuehne alleges that the district court erred in failing to instruct the jury regarding the difference between a "conspiracy" and "aiding and abetting." Because Kuehne did not raise this allegation before the district court, plain error review applies. In the instant case, we find that the district court did not err in instructing the jury. Although the jury instructions issued by the district court were far from perfect, it appears that the district court attempted to clarify for the jury the meaning of terms such as aiding and abetting. For example, when discussing count 2, which alleged that Kuehne aided and abetted Marlow and Duckro in stealing two firearms, the district court stated

> Ladies and gentlemen, for you to find the Defendant, John David Kuehne, Jr. guilty of aiding and abetting in the theft of firearms . . . it is not necessary for you to find that he personally committed the crime himself. You may also find him guilty if he intentionally helped or encouraged someone to commit the crime. A person who does this is called an aider and abettor.

(J.A. at 271) Moreover, even if the district court's attempts to provide guidance to the jury were insufficient, Kuehne has not alleged that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Webb*, 403 F.3d 373, 380 (6th Cir. 2005) (internal citations and quotations omitted). Thus, Kuehne's challenge to the district court's jury instructions must fail.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.