NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0326n.06

Case No. 23-1786

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="3">FILED<br>Jul 26, 2024<br>KELLY L. STEPHENS, Clerk</td></tr>
<tr><td>   Plaintiff-Appellee,</td><td>)<br>)<br>)</td></tr>
<tr><td>v.</td><td>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN</td></tr>
<tr><td>TYRONE EUGENE HENDERSON,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>   Defendant-Appellant.</td><td>)<br>)</td><td>O P I N I O N</td></tr>
</table>

Before: GIBBONS, KETHLEDGE, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. In November 2022, law enforcement officers executed a search warrant at a home occupied by Tyrone Eugene Henderson. Based on evidence seized during the search, a federal jury later convicted Henderson of possession with the intent to distribute controlled substances and being a felon in possession of firearms. The district court sentenced him to 292 months' imprisonment. Henderson timely appealed, arguing that the district court erred or otherwise abused its discretion by: (1) denying his motion to suppress evidence seized from the residence where he had conducted recorded drug sales in the days leading up to the search and denying his request for a *Franks* hearing; (2) denying his request to disclose the identity of a confidential informant and recordings of controlled buys; (3) admitting evidence of uncharged controlled buys; (4) denying his Rule 29 motion for acquittal based on the insufficiency of the

evidence; and (5) imposing a substantively unreasonable sentence. For the reasons set forth below, we affirm.

## I.

### A. Factual Background

On November 10, 2022, law enforcement officers of the Kalamazoo Valley Enforcement Team ("KVET") executed a search warrant at 524 Florence Street in the city of Kalamazoo, Michigan. The search uncovered multiple controlled substances, drug paraphernalia, several drug trafficking "tools of the trade" such as digital scales and cutting agents, a cache of firearms, and thousands of dollars in U.S. currency. Henderson was the sole occupant of the house when it was searched and based on the items recovered as well as facts developed during the investigation leading up to the search, he was arrested and charged. The following facts emerged from the search warrant affidavit and later trial.

*Search Warrant Facts.* Between December 2020 and July 2021, KVET received detailed information from three confidential informants (individually "CI") regarding drug deals in Kalamazoo, Michigan. Each CI disclosed that Tyrone Henderson, also known as "Tidy," was selling large quantities of methamphetamine and heroin from a residence at 524 Florence Street. Each CI also positively identified Henderson by photograph as "Tidy," and one informant, CI #1558, stated that Henderson had "numerous firearms in his residence." (R. 42-1, PageID 167). Based on this information, KVET began conducting surveillance on the Florence Street residence in July 2021. Over the course of six days, KVET observed Henderson enter and leave the front door of Florence Street—using a keypad to enter—over fifteen times. KVET also observed that at least five times, Henderson arrived and parked in the driveway at 524 Florence Street driving a silver Audi Q7, which KVET confirmed matched the make, model, and license plate registered to

Henderson. From these observations, KVET deduced that Henderson had moved into 524 Florence Street and that he "took over" the home from a relative who recently had been convicted of drug trafficking. (R. 42-1, PageID 168).

Between September and October 2022, two more confidential informants told KVET that Henderson was living at and selling large amounts of heroin and methamphetamine from Florence Street (CI #331 and CI #2701). CI #331 had also observed two firearms inside the residence. KVET followed up by searching its records system for Henderson and found that his current address was listed as "524 Florence Street." (R. 42-1, PageID 169). KVET also conducted a criminal history query for Henderson and found multiple felony convictions, two of which involved drug trafficking.

Later, in October and November 2022, KVET began a new phase in the investigation. On October 19, October 25, November 2, and November 7, KVET utilized CI #331 to conduct controlled buys of methamphetamine, heroin, and fentanyl. For each controlled buy, Investigator Ben Ulman (the affiant) provided CI #331 with documented KVET funds and thoroughly searched CI #331's person and vehicle before surveilling CI #331 enter the Florence Street address through the front door. Using electronic audio and video surveillance, Ulman then observed CI #331 speak to Henderson inside the Florence residence. Shortly thereafter, Ulman observed CI #331 exit through the front door and return to him with controlled substances. Each time, CI #331 advised Ulman that Henderson delivered the controlled substances and reported that there was a large quantity of either methamphetamine or heroin inside the residence. After each controlled buy, Ulman sent the contraband to the Kalamazoo Department of Public Safety ("KDPS") crime lab, which confirmed they were controlled substances. Importantly, KVET captured much of this evidence through a pole camera installed near the Florence Street address to observe the residence.

A pole camera captured Henderson entering and exiting the residence on each day of the remaining three controlled buys.

Two days after the last controlled buy, Ulman obtained a warrant to search the Florence Street residence based on the information described above, all of which was described in an affidavit accompanying the warrant request. KVET officers executed the search warrant at around 6:30 am the next day. They found Henderson alone in the kitchen and dining area beside two phones, which they immediately seized. KVET also found other evidence that suggested that Henderson was the sole occupant of the residence: the residence had only one bedroom, men's clothes in his size, only one toothbrush, and a stack of residency paperwork addressed to Henderson.

KVET officers also seized controlled substances, paraphernalia and other items related to drug trafficking, and firearms as follows:

1. A camouflage roller bag containing a metal hand press, a larger hydraulic press, two blenders, a sifter, lactose powder, scissors, vinyl gloves, acetone spray, and a plastic bag holding over 400 grams of heroin.

2. A laptop carrying case containing over three kilograms of heroin and fentanyl and 5.8 grams of cocaine.

3. A red backpack containing a glass jar filled with multi-colored tablets of methamphetamine.

4. A black duffle containing three firearms—including two semi-automatic weapons, and a gray duffle bag containing a rifle sight and ten firearm magazines (nine loaded) found in the open kitchen and dining area.

5. $4,400 cash on top of a kitchen cabinet ($600 of which was money KVET used during the controlled buys from Henderson) and another $40 from Henderson's person.

6. An operational digital scale with fentanyl residue on it, two other digital scales, a mixing bowl with methamphetamine residue on it, nitrile gloves, and sandwich bags.

7. A money counter in the basement.

8. A loaded Anderson Manufacturing AM-15 multi-cal rifle hidden in a secret compartment behind a mirror in the upstairs bedroom.

9. A gray shoulder sling backpack in the upstairs bedroom that contained a loaded Glock22, Gen4, .40 caliber pistol, two additional Glock magazines, Henderson's driver's license, medical marijuana card, Costco card, and two bank cards.

KVET officers also seized Henderson's cell phone. A forensic examination of Henderson's iPhone revealed pictures of the inside of the Florence Street address depicting the same types of controlled substances, paraphernalia, and firearms that were seized during the search.

Laboratory analysis confirmed that KVET seized over 2.3 kilograms of fentanyl, 1.3 kilograms of a heroin/fentanyl mixture, 516.8 grams of 10 heroin, 489.55 grams of methamphetamine, and 5.8 grams of cocaine.

**B.**

On December 6, 2022, a federal grand jury in the Western District of Michigan returned a three-count indictment against Henderson charging him with possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) (Count 1); being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8) (Count 2); and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 942(c)(1)(A) (Count 3). The government did not charge Henderson for his conduct during any of the four controlled buys conducted by CI #331.

Before trial, Henderson filed a series of motions which the district court ultimately denied. These included: (1) a motion to compel discovery of confidential informant information and recordings; (2) a motion to suppress evidence; and (3) a motion to exclude controlled-buy evidence.

**C.**

Henderson went to trial in May 2023. The government did not call CI #331 as a witness. But it introduced evidence from the controlled buys that took place on November 2, 2022, and

November 7, 2022, through Investigator Jeff Salmon, who participated in the surveillance of the buys. The government also introduced the evidence seized during the search of the Florence Street address on November 10, 2022. At the close of the government's case, Henderson moved for judgment of acquittal, arguing that there was insufficient evidence for the jury to conclude that he possessed the drugs and firearms inside the residence. The court denied Henderson's Rule 29 motion. Henderson rested without putting on a defense. The jury convicted Henderson of possession with intent to distribute controlled substances and being a felon in possession of firearms. It acquitted him of possession of firearms in furtherance of a drug trafficking crime. Henderson received a within-Guidelines sentence of 324 months' imprisonment on Count 1 and a concurrent sentence of 180 months' imprisonment on Count 2. Henderson appeals both his conviction and his sentence.

## II.

Henderson raises the following claims: (1) the district court erred by denying his motion to suppress evidence seized from the Florence Street address and denying his request for a *Franks* hearing; (2) the district court abused its discretion and violated due process by denying his request to disclose the confidential informant's identity and the recordings of the controlled buys; (3) the district court abused its discretion by admitting evidence of the uncharged controlled buys; (4) the district court erred by denying his Rule 29 motion regarding the sufficiency of the evidence for Counts 1 and 2; and (5) his 324-month sentence was substantively unreasonable due to his mitigating history and characteristics. We address each argument in turn.

## A.

*Motion to Suppress.* We review the district court's legal conclusions for denying a motion to suppress de novo and its findings of fact for clear error. *United States v. Marsh*, 95 F.4th 464,

468 (6th Cir. 2024) (citing *United States v. May-Shaw*, 955 F.3d 563, 566 (6th Cir. 2020)). We evaluate a district court's denial of a *Franks* hearing under the same standard. *United States v. Bateman*, 945 F.3d 997, 1007–08 (6th Cir. 2019).

Henderson moved to suppress the evidence seized from the Florence Street address, arguing that the affidavit supporting the warrant contained false and misleading information and omitted critical facts. He also requested a *Franks* hearing to address these concerns. Among several complaints in his motion, Henderson objected to Ulman's affidavit statements that Florence Street was his listed address at the time and that he was in and out of the residence. The district court rejected Henderson's challenge, found that he failed to make a substantial showing that Ulman made a knowing and intentional false statement or a statement in reckless disregard to the truth, and denied Henderson's motion to suppress as well as his request for a *Franks* hearing.

On appeal, Henderson argues that the district court erred by denying his motion to suppress evidence seized from Florence Street and his request for a *Franks* hearing. In support of this argument, Henderson claims that Ulman's affidavit lacked probable cause because it relied on the two aforementioned false statements.

"A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *Bateman*, 945 F.3d at 1008. An affidavit supporting a search warrant enjoys "a presumption of validity," and the decision to grant an evidentiary hearing is within the "sound discretion of the district court." *Id*. (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978), *and United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017)). To show entitlement to a *Franks* hearing, a defendant must: "1) make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove[] that the false statement or material omission [was] necessary to the

probable cause finding in the affidavit." *Id.* (quoting *Young*, 847 F.3d at 348–49) (first two alterations in original). Importantly, "[a] law enforcement officer's statement is only considered to be issued with 'reckless disregard for the truth' if a defendant shows that the affiant subjectively 'entertain[ed] serious doubts as to the truth of his [or her] allegations.'" *Id.* (citing *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)). Mere "[a]llegations of [an agent's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. Lastly, even if the challenged statements are ultimately false or reckless, a *Franks* hearing is unnecessary where other "sufficient content" in the search warrant affidavit supports finding probable cause. *Id.* at 171–72. Henderson fails the *Franks* analysis at the first step. Henderson cannot show that he made a "substantial preliminary showing" before the district court that Ulman knowingly and intentionally made any false statements or otherwise made statements in reckless disregard to their truth. *Bateman*, 945 F.3d at 1008 (citing *Young*, 847 F.3d at 348–49). Foundationally, Henderson cannot show that any of Ulman's challenged statements were false.

Henderson first claims that Ulman falsely stated that Henderson lived at Florence Street. For support he points to the fact that his vehicle registration, title, insurance documents, and state driver's license all listed an address different from 524 Florence Street at the time. But none of these facts disprove Ulman's statement that the "KDPS records system" listed Henderson's current address as 524 Florence Street. (R. 42-1, PageID 169). Paragraph K of the affidavit stated: "That on or about October 18, 2022, your affiant conducted an ILEADS (KDPS records system) query for Tyrone Henderson and found that his current listed address is 524 Florence Street." (*Id.*). As the district court appropriately concluded, "[t]hat some other record system provides a different address does not establish that the affiant made a false or misleading statement." (R. 58, PageID 349). There was no reason for the reviewing magistrate to be misled about the basis for Ulman's

statement; he clearly linked his conclusion to information contained in the KDPS records system. Henderson's evidence falls far short of the substantial showing necessary to justify a *Franks* hearing.

Henderson's second challenge fails for the same reasons. He contends that Ulman falsely stated that he was "in and out" of Florence Street "(as if for drug transactions)." (ECF 17, Appellant's Br. 28). But Henderson's assertion mischaracterizes the affidavit. Paragraph H of the affidavit states that Ulman reviewed the video from the hidden camera installed near Florence Street, and it showed Henderson "key[ing] in and out of the front door of 524 Florence Street over 15 times." (R. 42-1, PageID 168). It does not state that he did so to sell drugs. And Henderson makes no argument that the statement was otherwise false or made in reckless disregard to the truth. Moreover, Henderson concedes that he was doing renovation projects inside Florence Street during the July 2, 2021, to July 8, 2021, period captured by the covert pole camera. As such, it seems likely that such renovations inside Florence Street would have required him to enter and exit the residence. Because the affidavit merely recounts Henderson's movement and access to Florence Street during the relevant period, Henderson's challenge based on whether he was entering and exiting the residence to sell drugs fails.

Moreover, even if Henderson could establish that Ulman's statements were knowingly false or made with reckless disregard to the truth, an abundance of other "sufficient content" in the affidavit supported probable cause to search the Florence Street residence. In particular, KVET had received information from experienced and reliable confidential informants that Henderson sold and stored narcotics at Florence Street over both a long period of time and more recently and that he possessed firearms there. KVET had also conducted its own surveillance of the residence, which revealed Henderson regularly coming and going at the residence, parking his vehicles there,

and conducting four (controlled) narcotics transactions inside the residence. KVET was familiar with Henderson from past law enforcement activity and had historical information suggesting that Henderson had taken over the Florence Street address from a family member who remained listed as the owner of the residence. The district court did not err on the basis of this evidence.

Henderson's insistence that the confidential informant and controlled buy information in the affidavit were insufficient to support the warrant for the Florence Street address lacks merit. Henderson analogizes KVET's search of the residence to the illegal search in *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), overruled on other grounds by *DePierre v. United States*, 564 U.S. 70, 79 (2011). In *Higgins*, we held that a search warrant lacked probable cause because the accompanying affidavit failed to show a nexus between the crime and the place to be searched. *Id*. at 390. But, unlike Ulman's affidavit, the affidavit supporting the search in *Higgins* neither addressed the informant's reliability nor suggested that the informant had ever been inside the target's apartment. *Id.* While even those failings, under more recent precedent, may be insufficient to undermine probable cause, *see United States v. Sanders*, No. 21-5945, 2024 WL 3218723, at *1 (6th Cir. June 28, 2024) (en banc), they are inapposite here. The affidavit for 524 Florence Street contained a statement addressing the CI's reliability; the controlled buys were observed in real-time by law enforcement; and the four successful controlled buys inside the residence created a clear nexus between Henderson's residence and drug trafficking. Based on this evidence, the district court did not err by denying Henderson's motion to suppress evidence seized from Florence Street and denying his request for a *Franks* hearing.

**B.**

*Motion to Compel Discovery of Confidential Informant Information and Recordings.* Henderson first filed a motion for disclosure of exculpatory evidence and documents under *Brady*

*v. Maryland*, 373 U.S. 83, 87 (1963). In it, he sought production of (1) evidence of any promises, implied promises, side agreements, or implied threats made to any potential witness; (2) confidential informant files; (3) all pole camera footage referred to in the search warrant affidavit for the Florence Street address; and (4) audio and video of Henderson involved in controlled buys with CI #331 inside the Florence Street home.

The government produced only the pole camera footage of the Florence Street residence and screenshots of each requested controlled buy to show probable cause. It did not produce any of Henderson's other requested materials. The government reasoned that any confidential informant material, including the recordings of CI #331's controlled buys, would imperil the informant. It also asserted that it was not required to disclose the information because Henderson was not charged with any of the recorded controlled buys. The district court agreed and denied Henderson's motion. It determined that none of the information Henderson sought fell under *Brady*, *Giglio*,[1] or the Jencks Act,[2] and that Henderson had not met his burden to overcome the informant privilege.

We review the district court's denial of discovery motions and motions to disclose the identity of confidential informants for abuse of discretion. *United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015) (citing *United States v. Seymour*, 739 F.3d 923, 927 (6th Cir. 2014), *and United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992)). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (citing *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005)).

---

[1] *Giglio v. United States*, 405 U.S. 150 (1972).

[2] 18 U.S.C. § 3500.

Henderson argues that the district court abused its discretion and violated due process when it denied his request to disclose the confidential informant's identity and the recordings of the controlled buys. We disagree.

In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court described the considerations courts must make when determining whether disclosure of a confidential informant is warranted. *See Ray*, 803 F.3d at 273. In sum, courts must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62 (internal quotation marks omitted). Whether nondisclosure is erroneous "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*. In applying *Roviaro*, we have observed that the government has a "limited privilege" to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," which is constrained by "the fundamental requirements of fairness," *Ray*, 803 F.3d at 273 (quoting *Roviaro*, 353 U.S. at 59, 60). When "disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the privilege must give way." *Id*. (quoting *Roviaro*, 353 U.S. at 60–61).

That said, "[m]ere conjecture or supposition about the *possible* relevancy of the informant's testimony is insufficient to warrant disclosure." *Id*. (emphasis added) (quoting *Roviaro*, 353 U.S. at 62). "A defendant must provide some evidence that disclosure of the informant's identity would assist in his defense before disclosure will be warranted." *Id*. at 274; *see, e.g.*, *Moore*, 954 F.2d at 381 (affirming denial of motion to compel where defendant "advanced no more than a simple statement that [informant's] testimony might assist in his defense," stating that "[a]n informant

must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial");

*see also United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985) (finding trial court abused discretion by ordering disclosure of informant's identity based solely on unsworn representations that disclosure would be relevant and helpful to the defense).

Here, the district court was within its discretion to allow the government to withhold the identity of CI #331 and the recordings of the controlled buys based on Henderson's failure to meet his burden under the *Roviaro* balancing test. Henderson was not charged with any crime arising from the controlled buys, and the government only used the evidence and information provided by CI #331 to establish probable cause to search 524 Florence Street. Further, because the CI was not actively participating in Henderson's charged activity—possession with intent to distribute controlled substances and possession of firearms as a felon and (separately) in furtherance of drug trafficking—the informant was more akin to a tipster rather than a witness. As such, the CI was not subject to any heightened scrutiny *Roviaro* might require. The court found that Henderson could not demonstrate how the requested information would "materially aid" his defense or be "necessary for a fair trial." (R. 54, PageID 313–14). These failings, concluded the court, made Henderson's request "speculat[ive]." (*Id*. at 314). We find nothing here to suggest that the district court abused its discretion.

Pushing back, Henderson insists that because the "CI was the very person that gave the facts to the police to get a search warrant" and "participated in four controlled buys inside of 524 Florence Street," disclosure of the confidential informant's identity was warranted "on its face." (ECF 17, Appellant's Br. 16–17). But as the district court correctly concluded, the confidential informant was no more than a "tipster" given that Henderson faced no criminal charges for his conduct during the controlled buys. *See United States v. Sales*, 247 F. App'x 730, 734–35 (6th

Cir. 2007) (quoting *Sharp*, 778 F.2d at 1186 n.2); *see also Ray*, 803 F.3d at 273–74 ("Ray was not charged with any crimes related to the controlled buys, thus the CI was not involved in, and could not testify about, the crimes for which Ray was charged and could not have provided testimony about any fact relevant to those charges"). Moreover, it is unclear how such disclosures or any subsequent testimony from CI #331, who reported seeing large quantities of drugs inside 524 Florence Street during the controlled buys, would have helped Henderson's case. The evidence of Henderson distributing drugs around a large quantity of drugs is not helpful to Henderson. And to the extent Henderson seeks to disclaim the seized drugs and guns as someone else's who had access to the residence, the district court found that he never proffered any evidence showing how the informant's identity or testimony could help in that regard. We find none of Henderson's arguments on appeal sufficient to disturb these findings.

The district court also denied Henderson's request for the audio and video of the four controlled buys. Looking again to *Roviaro* balancing, the district court declined to order disclosure of the recordings under Federal Rule of Criminal Procedure 16(a)(1)(B)(i) because the recordings would have disclosed the identity of the confidential informant and the controlled buys were not the factual basis for the crimes charged. Further, with respect to the government's disclosure obligations, the district court questioned the government's counsel and found that counsel "clearly indicated" that they understood their *Brady* obligation to disclose exculpatory evidence. (R. 126, PageID 980). Because the district court was confident that the government understood its responsibility to disclose exculpatory evidence and asserted there was none, the court concluded that it had "no reason to disbelieve" the government's attestation and order disclosure. (*Id*.). Under the circumstances, no more was required. Henderson is unable to show this court how the district court abused its discretion here.

Henderson next asserts that the "significant holes in the government's evidence at trial" concerning his ownership of 524 Florence Street and possession of the seized contraband warranted disclosure of the recordings. (ECF 17, Appellant's Br. 17). But Henderson's legal ownership of the home (or lack thereof) does not foreclose his custody and control (possession) of the contraband. Moreover, Henderson established through law enforcement witnesses that he was not the listed property owner, which the government did not dispute. Defense counsel agreed with the district court that there was "no doubt" that the "venue" of the controlled buys and the search were "the same." (R. 126, PageID 976). The district court assessed all the relevant factors under the *Roviaro* balancing framework and found that they weighed against disclosure. And Henderson cannot show how disclosing the recordings of the controlled buys would "substantively assist his defense" or that it was "essential to a fair trial." *Moore*, 954 F.2d at 381. Because Henderson cannot explain how disclosing the full recordings would materially assist in his defense, there is no indication that the district court abused its discretion in denying his motion.

*Due Process*. Lastly, Henderson's argument that a defendant's right to due process "is violated when the government achieves a conviction by withholding evidence that would clearly support a claim of innocence" merits a more fulsome response. (ECF 17, Appellant's Br. 18). Though brief, Henderson rests his due process claim on his contention that the recordings would show whether anyone else was present for the controlled buys and what happened during those buys.

The Supreme Court has consistently held that "[t]here is no general constitutional right to discovery in a criminal case[.]" *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). However, in *Brady*, the Court held that the Due Process Clause requires the government to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. 373 U.S.

at 87. In *United States v. Bagley*, the Court clarified that the purpose of the *Brady* rule was "not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." 473 U.S. 667, 675 (1985). Thus, the Court reasoned that a prosecutor was "not required to deliver his entire file to defense counsel," but rather was "only [required] to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id*.

Here, Henderson's case does not fall within the rule of *Brady* and *Bagley*, because the information Henderson sought was not "favorable." *Lorraine v. Coyle*, 291 F.3d 416, 441–42 (6th Cir. 2002) (quoting *Bagley*, 473 U.S. at 675). The recordings of Henderson distributing controlled substances to confidential informants are not favorable information. Henderson asserts that the recordings would show whether anyone else was present for the controlled buys and what happened inside the residence. But as mentioned above, the controlled buys were not the factual basis for the crimes charged. Further, the government's stipulation and Salmon's testimony— which was subject to cross-examination by the defense—established that the confidential informant's camera did not record anyone else inside the house. *See also Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose." (cleaned up)). Thus, *Brady* is inapplicable here.

Henderson similarly argues that he was not allowed to "forensically examine[] the actual recordings." (ECF 17, Appellant's Br. 18). However, it is not plausible that a forensic examination of the recordings would have been favorable and material to the defense. Ulman swore under oath that he heard and saw the transactions as they took place. And Salmon testified at trial that the

still images taken from the recordings accurately showed what had been recorded.  Henderson's speculation about what forensic examination of the recordings might have done for his case fails to establish materiality for constitutional purposes.  *Henness v. Bagley*, 644 F.3d 308, 325 (6th Cir. 2011).

To the extent that Henderson argues he "had no opportunity to contest the lab reports associated with the transactions," the government offered pretrial to provide the lab reports on the drugs acquired in the controlled purchases, which Henderson chose to ignore.  (ECF 17, Appellant's Br. 18).  Accepting Henderson's suggestions that he could have plausibly articulated something favorable would have come from his requests, he cannot show how the absence of the lab reports for *uncharged* transactions would undermine confidence in the verdict.  Indeed, the jury charged him with committing crimes on a completely different date and the weight of the evidence of his crime on November 10, 2022, was overwhelming.  *See Bagley*, 473 U.S. at 682. Henderson's due process challenge, thus, fails.

## C.

*Admission of the Controlled-Buy Evidence.*  The district court denied Henderson's motion in limine to exclude the evidence of the controlled buys because it held that the controlled buys were intrinsic to his charged offenses.  Henderson argues that the district court abused its discretion because, he says, the evidence of the controlled buys was uncharged, irrelevant to any fact "of consequence," and was inadmissible under Rule 403 of the Federal Rules of Evidence.  (ECF 17, Appellant's Br. 29–31).

Intrinsic acts are defined as evidence "probative of the crime charged," that "were necessary preliminaries to the crime charged."  *United States v. Sumlin*, 956 F.3d 879, 889 (6th Cir. 2020) (citations omitted).  The district court reasoned that the controlled buys were part of an

ongoing pattern of Henderson's criminal activity and drug dealing. The court noted that the four controlled buys were "very close in time" to the execution of the search warrant on November 10, 2022, and the screenshots of the buys were central to the government's arguments depicting that pattern of activity. (R. 126, PageID 980–81). Indeed, $600 of the $4,000 seized on November 10 was money that law enforcement had given to CI #331 to purchase drugs mere days before. At trial the government ultimately only admitted screenshots from the November 2 and November 7 controlled purchases. The court instructed the jurors to remember that Henderson was "on trial here only for the crimes charged in the Indictment, not for the sale of drugs to a government informant." (R. 130, PageID 1478). It also advised the jury to refrain from returning a guilty verdict unless the government proved "the crimes charged in the Indictment beyond a reasonable doubt." (*Id.*). We find no abuse of discretion here.

Moreover, Henderson offers no argument and cites no authority to show that the district court was wrong to conclude the controlled buys were intrinsic evidence. Instead, Henderson argues that the controlled buys were "not relevant to a fact of consequence" because the government did not charge him with them. These arguments are not enough. Indeed, it is woefully insufficient "for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). And we consider arguments forfeited where "[i]ssues [are] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Id.* Because Henderson makes no argument regarding the district court's decision to find the controlled buys intrinsic evidence, we agree with the government that Henderson has forfeited this issue on appeal. To the extent that Henderson contends that the controlled buys may have confused the jury, or that the jury judged him "not for

the facts of this case," (ECF 17, Appellant's Br. 31), the district court assuaged such concerns when it offered a limiting instruction to the jurors, *see United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001) (affirming that jurors are presumed to follow instructions).  The district court did not abuse its discretion.

**D.**

*Sufficiency of the Evidence.*  Henderson asserts that the district court erred by denying his Rule 29 motion challenging the sufficiency of the evidence for Count 1 (possession with intent to distribute the controlled substances) and Count 2 (felon in possession of a firearm).

We review a challenge to the sufficiency of the evidence supporting a conviction de novo. *United States v. Belcher*, 92 F.4th 643, 652–53 (6th Cir. 2024).  The operative question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 652 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Importantly, "[w]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict, and it is not necessary for us to exclude every reasonable hypothesis but guilt."  *Id*. (quoting *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997)).  Accordingly, a defendant challenging the sufficiency of the evidence "bears a very heavy burden."  *Id*. at 653 (quoting *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005)).  "'[C]ircumstantial evidence alone is sufficient to sustain a conviction,' even if it does not 'remove every reasonable hypothesis except that of guilt.'"  *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

1.

*Possession with Intent to Distribute*. To convict a defendant of possession with the intent to distribute, the government must show "(a) the defendant knowingly (b) possessed a controlled substance (c) with the intent to distribute." *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022) (quoting *United States v. King*, 339 F. App'x 604, 608 (6th Cir. 2009)); *see* 21 U.S.C. § 841(a)(1), (b)(1)(B)). "The defendant does not need to be in actual possession of the substances; 'constructive' or 'joint' possession suffices." *Id*. (quoting *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006)). Constructive possession only requires that a person "knowingly has the power and the intention at a given time to exercise dominion and control" over an item, whether directly or indirectly. *United States v. Crump*, 65 F.4th 287, 295 (6th Cir. 2023) (citation omitted). "It follows that constructive possession also exists when the person has dominion over the premises where the [contraband] is located." *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993). Separately, the "intent to distribute may be inferred from a large quantity of drugs." *Hall*, 20 F.4th at 1107 (citing *United States v. Phibbs*, 999 F.2d 1053, 1065–66 (6th Cir. 1993)). Here, the evidence and testimony introduced at trial was sufficient to prove Henderson's possession of 524 Florence Street and the drugs inside with the intent to distribute them.

Henderson maintains that there was insufficient evidence because the trial evidence did not show that he "controlled, much less owned, [524 Florence Street]." (ECF 17, Appellant's Br. 20). Henderson contends that he "was just in the residence, and just being in the presence of where something is located does not equal possession." (*Id*. at 24). But Henderson did not need to own 524 Florence Street to exercise 'dominion' and 'control' over the property and the drugs did not need to be on him for him to 'possess' them. *See United States v. Latimer*, 16 F.4th 222, 227 (6th

Cir. 2021). Constructive possession can be demonstrated through circumstantial evidence connecting him to the contraband. *Id.*

We have found dominion and control under less compelling circumstances. In *United States v. Jenkins*, we found possession where the defendant was not the owner of the residence, stated that he lived there only part-time, and several people had free access to the residence. 593 F.3d 480, 483 (6th Cir. 2010). Jenkins's presence at a home where law enforcement found drugs and guns was not the sole factor supporting our determination. *Id.* (Indeed, the defendant was only one of four people in the yard of the residence.). Law enforcement also found that the house's only bedroom had the defendant's "drivers license, pay stubs, bank cards, work-ID badge, numerous bags of marijuana—including one on a nightstand next to his drivers license—digital scales, and a loaded .38 caliber pistol." *Id.* "This evidence easily permitted the jury to find that Jenkins had the power and intention to exercise control over the guns and drugs in the house." *Id.* at 484.

Here, the evidence and testimony introduced at trial showed that there was ample evidence to prove Henderson possessed the drugs inside 524 Florence Street with the intent to distribute them. Though Henderson disputes that he lived at the residence, KVET's records system listed 524 Florence Street as Henderson's current address. Pole camera surveillance showed Henderson repeatedly entering and exiting 524 Florence Street over a ten day period preceding the search. And Henderson was alone inside 524 Florence Street when law enforcement arrived at 6:30 in the morning, with evidence suggesting that Henderson was the sole resident of the house including that: the home had only one bedroom; the only clothes present were men's clothes in his size; there was only one toothbrush; there was a stack of residency paperwork and mail addressed in Henderson's name; and Henderson's driver's license, medical marijuana card, Costco card, and

two bank cards were in the sole bedroom. These facts, combined with a host of other identifying evidence found inside the residence, show that Henderson had "dominion" and "control" of 524 Florence Street and the controlled substances inside.

Second, there was substantial evidence that Henderson planned to distribute controlled substances. Investigators found a multitude of drug distribution paraphernalia: fold-top sandwich bags, nitrile gloves, a mixing bowl with a spoon and methamphetamine residue in it, and digital scales. The government also introduced evidence extracted from Henderson's cell phone showing photos of drug trafficking paraphernalia, cash, firearms, and controlled substances and text threads about trafficking. More importantly, KVET's lab confirmed that officers seized over 2.3 kilograms of fentanyl, 1.3 kilograms of a heroin/fentanyl mixture, 516.8 grams of 10 heroin, 489.55 grams of methamphetamine, and 5.8 grams of cocaine from Florence Street. And Detective Gregory Day of KDPS's Detective Bureau testified at trial—with no objection or cross-examination questions on the issue from the defense—that based on his training and experience, these amounts were "absolutely" of distribution quantity. (R. 129, PageID 1401). Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of Count 1 beyond a reasonable doubt. The district court did not err by denying Henderson's Rule 29 motion on Count 1.

2.

*Felon in Possession of a Firearm.* Likewise, there was also sufficient evidence to convict Henderson of Count 2, which charged Henderson with being a felon in possession of a firearm. To convict a defendant as a felon in possession of a firearm, the government must prove "(1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm . . . specified in the

indictment; and (3) that the possession was in or affecting interstate commerce." *Id.* (quoting *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)). Here, Henderson stipulated to the first and third elements. Henderson disputes only whether he possessed the firearms. However, just as for the drug count, either actual or constructive possession is sufficient for convictions under 18 U.S.C. § 922(g)(1). *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997). Here, the government presented ample proof that Henderson constructively possessed the firearms listed in the indictment. Not only did officers find several of the firearms near the kitchen area, where Henderson exercised control and engaged in drug trafficking activities, but they also found another one in a shoulder bag that contained Henderson's drivers license and other personal identifiers. Given the evidence of constructive possession and viewing the evidence in the light most favorable to the prosecution, we find that the district court did not err by denying Henderson's Rule 29 motion on Count 2 either.

**E.**

*Substantive Reasonableness.* Henderson maintains that his 324-month sentence was substantively unreasonable due to his mitigating history and characteristics. We review claims challenging the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 40–41 (2007). To be substantively reasonable, a sentence must be "proportionate to the seriousness of the circumstances of the offense and offender" and "sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citations and quotation marks omitted). On appellate review, a within-Guidelines sentence is presumed substantively reasonable, *see United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020), but "a defendant can rebut this presumption if a district court chose a sentence arbitrarily, ignored pertinent § 3553(a) factors, or gave unreasonable

weight to any single factor," *United States v. Messer*, 71 F.4th 452, 462 (6th Cir. 2023) (citations omitted). Yet, rebutting the presumption is "no small burden," and we generally do not "second guess" sentences on substantive grounds when they fall within the Guidelines. *United States v. Simmons*, 587 F.3d 348, 365 (6th Cir. 2009). Here, Henderson has not met his burden to rebut the presumption of reasonableness for his within-Guidelines sentence. The record shows that the district court thoroughly and appropriately weighed the § 3553(a) factors when issuing its sentence.

The district court imposed a within-Guidelines sentence of 324 months after making well-supported factual findings and giving reasonable weight to the statutory sentencing factors. The district court noted that the sentence reflected the seriousness of Henderson's offense, promoted respect for the law, and provided just punishment. The district court also observed that the controlled substances Henderson was trafficking—fentanyl, methamphetamine, and heroin—were "major scourges in the Western District of Michigan." (R. 131, PageID 1516). It highlighted that Henderson was responsible for 3,812 grams of fentanyl and that fentanyl was an exceptionally dangerous drug due to overdose deaths it can cause. Lastly, the district court also considered but did not find mitigating Henderson's background, age, and his prior drug trafficking conviction in 2002. It noted that Henderson received ten years in prison for his prior conviction but apparently did not learn from it because he resumed trafficking drugs. The district court weighed Henderson's objections regarding his mitigating history and characteristics and ultimately found them less persuasive than the considerations regarding the other § 3553(a) factors. *See Messer*, 71 F.4th at 462. Given the district court's well-articulated reasoning for adhering to the Guidelines, Henderson has not rebutted the presumption of reasonableness for his within-Guidelines sentence. Thus, we find that the district court did not abuse its discretion in imposing a 324-month sentence.

## III.

For the reasons discussed, we affirm.